Good morning, your honors. Jerry Bonnet is my name. I represent the Mastros. And this is a couple of cases which are somewhat complicated procedurally. Yes. But hopefully not as fishy as the last case. You get negative two minutes. As long as you don't double it. Briefly, the facts of this case, and I know you're all aware of the facts. I will state them briefly for the benefit of the others in the room. Mr. Momot is a lawyer in Las Vegas who was an investor in three Arizona limited liability companies, each of which owned a Mastros fine dining restaurant. In 2007, the assets of all the seven fine dining restaurants in the chain were sold, including the assets of those three in which Mr. Momot was an investor. Several months before that sale, the parties entered into what's been called an asset allocation agreement. One of the purposes of that agreement, of course, was to allocate among the various selling entities the gross sales price for all of those assets. But that wasn't the only purpose. According to recital L of that agreement, another purpose was to wipe the slate clean among all these parties by entering into covenants not to sue and releases. And they were bilateral, mutual, they went both ways. So that's section two of the asset allocation agreement. Section four of the asset allocation agreement is a broadly worded arbitration clause. And it calls for the arbitration of, quote, any dispute that arises out of or relates to this agreement, the relationships that result from this agreement, the breach of this agreement, or the validity or application of any of the provisions of this arbitration clause itself. Another section of that agreement provides that Arizona law will govern its application and enforcement. And then it says the parties consent to personal jurisdiction in the state of Arizona and agree that Maricopa County, Arizona, will be proper venue for any action brought with respect to this agreement. I notice, by the way, it doesn't say a proper venue and it doesn't say the proper venue. I wish someone had thought to put in either of those two words. I wish they had too. That would have made my job a little bit easier or much more difficult. I don't know. And it doesn't say shall be proper venue either. And that was an important point to the district judge. The reality is here, though, that at least to start with, we really need to decide whether the question of arbitrability is for the court or whether it's for the arbitrator, right? That's question number one. It's a gateway issue. Right. And under the circumstances, we look to the language of the agreement, right? Correct. So if we, in looking to the language of the agreement, looking at the Supreme Court case law and the like, that the parties intended that the arbitrator decide that question, then that yields the fact that the question of arbitrability goes to the arbitrator. There is an obligation on the part of some district court, and we'll get to that later, to order arbitration and to abate any other action. Is that a correct reading of the law as you see it? That's the way I see it, especially under that recent Supreme Court authority, the rent-a-car ticket. Right. So if that's the case, and you look at the language of this particular document you read from it, is there anything in that that you can pick out that suggests in the slightest that the parties had an idea that someone other than the arbitrator would decide whether the document or whether the agreement was arbitrable? I see nothing. I see only one interpretation. The only way it could be more clear is if they had said, and we ain't kidding either. Well, let me put this. Rent-a-car was a lot clearer, wasn't it? That one was much clearer than this one. Well. It's exclusive. It said it should not be considered by any judge, state, federal, or local judge or agency. In other words, that one was clear. This one, I don't know. This one doesn't seem that clear to me. Well, what else could it mean when it says that the arbitrators are to decide the validity? Let's take a factual example or a hypothetical. What if we have a situation where, let's say, Beaumont claims that Maestro stole his Prius from a restaurant, from one of the restaurants. And as a defense, Maestro says, that falls within this agreement. Does that mean that that claim has to be decided by an arbitrator? As far as the arbitrability is concerned? Yes. If that's what you're saying. Excuse me. If my client were to say, that claim is arbitrable under this agreement, the first thing he has to do is convince the arbitrators that that's the case. And it gives it up to the arbitrator to decide rather than the judge. Yes. And I gather that the ball back here is the waiver and release clause, which is also very broad, so that if the concern that Judge Wu has expressed troubles anybody, then the reality is that the release clause and the waiver clause is sufficiently broad that it covers anything that would not be arbitrable and would be deemed waived at that point. Is that your position? My position is that clearly the breadth and scope of the release and the covenant are for the arbitrators to decide, because the cases have said you can't get into the underlying merits. And those are clearly arbitrable issues under this clause. And I agree with you. I mean, most of the arbitrators and these other issues about waiver and release are not before us. Correct. But if arguendum, there's some question about that, then it really falls back to the waiver and release, right? It falls back to can they be interpreted so as to bar all of these claims? If they can be, and that's for the arbitrators, but they clearly can be in this circumstance. Let me ask you this. There are some circuit cases that say that broad arbitration clauses that generally commit all interpreted disputes relating to arising out of an agreement do not satisfy the clear and unmistakable test. For example, there's Carson v. Food Giant, 175, 325, 330. It's a fourth circuit case. But why isn't that sufficient to give rise to a question as to whether or not the language here is clear and unmistakable? Well, for example, I tried to plug it into Lexis to see if there's any other decision that came out that uses these words. I couldn't find one. So it doesn't necessarily seem that clear to me. Isn't that sufficient to have that matter decided now by the judge rather than by the arbitrator? Well, I think you have to look at the dichotomy that is represented by the Rent-A-Car case. And there... But again, the Rent-A-Car case, the language is much better than the language here. I mean, that's no comparison. Well, let's look at what the Rent-A-Car case stands for. It says that there was an arbitration clause that was bifurcated like this one. But the problem, though, there is that it was premised on language as being clear and unmistakable. I mean, that is the decision that the basic district court judge has to make. Is this clear and unmistakable? If the language is clear and unmistakable, then it does, obviously. The district court judge says, I don't want it anymore. But if the district court judge says, well, you know, this one is kind of iffy, then at that point type is no longer clear and unmistakable. Is that correct? Well, he has some discretion to interpret the contract. But if he interprets this language not to be clear and unmistakable, I would say that would be an abuse of discretion. I can't see any way around this language when it says the arbitration clause itself, both its validity and its application. The dispute has to arise from it. It's not that whether or not something is the dispute is the thing that has to arise from it. Isn't that correct? I don't think so. I think Rent-A-Car says if there is a separate agreement to delegate this to the arbitrators, that in itself is enforceable under the Federal Arbitration Act. That clause in itself, even if the judge were deciding the issue, he would find that the underlying issues were not arbitrable. But because they delegated that gateway question to the arbitrators, they have to decide it. The gateway argument arises now, but the dispute itself doesn't arise. In other words, this dispute didn't originally arise because of the question as to whether or not their arbitration provision applies. This dispute arises from Mamet's claim that prior to the sale that the defendants engaged in this improper conduct, including forging his signature on certain documents, et cetera, et cetera, et cetera. So why does this dispute arise from a fall within this language? Because the dispute itself doesn't arise from this situation. The question now is whether or not the arbitration provision applies. But that's not the dispute that gives rise to this lawsuit. That's true. So if that's the case, then why is this a dispute? Well, because the lawsuit was filed, and we filed an arbitration based on potentially dispositive defenses. The arbitration was not about Mamet's claims, per se. It was about Section 2 of the arbitration agreement, clearly arbitrable. And it was to ask the arbitrators to enforce those complete defenses, covenant not to sue and release. Now Judge Hunt got into the question for himself of what proper interpretation of the release and the covenant was. And he found that it applied prospectively instead of to existing disputes or disputes that arise out of facts that predate the arbitration agreement. That's what Judge Hunt was doing. And he was clearly violating the principles and policies of the Arbitration Act. In doing so, his only function under Section 3 of the Act was to determine if disputes were arbitrable. After he decided whether or not that itself was a dispute. Yes, however, and I do agree to two steps. First of all, he has to make a determination as to whether or not it falls within the arbitration provision. And then he has to make a determination as to whether or not the claims that are ones that are covered. And he may have been mistaken as to the latter, but he may have been correct as to the former. I mean, you'll win something in the end if you win on either one. I'm not sure I understand what you mean by the latter and the former. In other words, I want to make a determination that the claims do fall within this. Certain of the claims that are raised do fall within because they are disputes that arise out of, et cetera. But there may be the initial determination I don't think is one of them. In other words, as to whether or not this dispute falls within, a dispute as to whether or not it's arbitrable automatically to the arbitrator. Your point is that. A dispute, et cetera. Okay. So your point is that you do not believe necessarily that the question of arbitrability was delegated to the arbitrators and therefore has to go to them under Rent-A-Car. Your issue is putting that aside. That issue is not the dispute. And the arbitration provision, it says if a dispute arises out of this agreement, et cetera, et cetera, et cetera. The dispute does not arise, you know, the underlying dispute does not arise out of this. The underlying dispute is the prior relationship between the parties that occurred well before this agreement arose. And I also don't think that Maumont is saying that, you know, if something is arbitrable that it shouldn't be, you know, submitted to arbitration. His position is that this stuff doesn't fall within arbitration. He may be right or wrong on that because he has many claims. Well, he's never taken the position that the release and covenant not to sue are not within the arbitration clause. Nobody's ever taken that position below in either case. Yeah, but the problem is even the language on those provisions are somewhat strange because, I mean, the last part of the, you know, Section 2 in regards to claims says claims does not and claims does not. I don't know if that's correct. Nothing says notwithstanding anything to the contrary set forth here, and claims does not include any obligations, debts, blah, blah, blah, blah, blah, blah, and claims arising out of this agreement, breach of agreement, or the obligation set forth in Sections 3 or 4. Very strange sentence. Well, but who's to decide that question? I mean, that's the arbitrators. The district judge decides it. District judge can't get into that underlying dispute under Supreme Court authority. I thought you said that you do because it also relates to whether or not the underlying or, sorry, the issue is arbitrable or not. I thought you said that in regards to you consider the release in also making the determination as to arbitrability, which may or may not be true. I don't think I took that position, and I apologize if I misled you with respect to that. My position is these are dispositive defenses to the claims Mr. Momin made in Nevada. They are clearly arbitrable. They are for the arbitrators to decide whether or not they dispose of those claims. Given that, the Volkswagen case out of the, I think it was the 7th or 4th circuits we've cited, says that the proper exercise of discretion, if the claims are dependent upon a ruling from the arbitrators, as here they clearly would be, these are threshold defenses that if they are ruled on in our favor, dispose of the whole case. In that circumstance, the case, all the arbitrable issues have to be arbitrated. Even if he believed there were non-arbitrable issues, they should have been stayed pending the outcome of the arbitration. I think we've got your position well in hand here. You've used up your time. Let's hear from the other side, and we'll give you a minute to respond. Thank you. Given that we've got two cases here, I think we're going to hear quite a bit more from you. Okay. Thank you, Your Honors. May it please the Court. My name is Mark Cook. I represent Mr. Momin in this case. What we are asking the Court to do, obviously, is affirm the lower court's decision. We want to be able to litigate our claims in district court, which are intentional torts in nature, conversion, forgery, fraud, punitive damage claims, which is why we filed those claims initially. Actually, we filed them initially in state court. Mr. Cook, those all arise out of this agreement, do they not? I do not believe any of them arise out of this agreement. Let me say it this way, but I'm, I think, pursuing the same point with the same ultimate conclusion as Judge Smith. They're all barred by this agreement. That is to say, there's a release in there that says they're all gone. Couldn't disagree more respectfully. I understand Justice Smith and Justice Fletcher, your points, but when we take a look at what we have here. Remember, there's no justice in the Ninth Circuit. We're judges. Thank you, Judge. You can call us justice, we don't care. What we filed here are intentional torts based on conduct of forgery, fraud, converting, where the main asset was taken away. These occurred prior to the execution of the allocation agreement. But, and let me just say, I practiced primarily transactional law for 37 years, so I've been involved in a whole lot of closings. Perfect. A whole lot of asset sales and so on. And one of the things, of course, that you want to do is to make certain that the parties have reached a final and complete agreement with respect to everything. The only surprise is you don't want anything. Sometimes these things are well-drafted, sometimes they are not well-drafted. But the reality is when I look at this arbitration clause, and I look at this language, if a dispute arises out of or relates to this agreement, the relationships that result from this agreement, the breach of this agreement, or the validity or application of any of the provisions of this Section 4, which is the arbitrability clause, and if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration. Now, that may not be the best arbitration clause in the world, but it's very, very broad. And clearly, it seems to me, as a former transactions lawyer, that what the parties were trying to do here was to say, look, this is what we've agreed upon. You've been represented by counsel. The other party has been represented by counsel. You've allocated things. We don't want any more stuff about this. We've agreed. Now, what your position seems to be is you come afterwards and you say, well, you know, there was this and there was that and the other, and I could go down and we don't have time here to detail all of the things in your complaint that, at least to me, seem to relate to the agreement or are talked about in the agreement. But the reality is it seems to completely undercut the validity of the arbitration clause. Now, from your perspective, I gather that the arbitration clause means nothing. To what does it apply? It would apply to issues related to the allocation distribution. In other words, for instance, even our accounting cause of action. We're not asking for an accounting of the allocation. We're asking for an accounting of what happened years prior. What about the release clause? Now, I should say, following up both on the conversation we had earlier and what Judge Fletcher said, I understand, all my colleagues understand, that if your opponent is correct and this is arbitrable, then we never get to the issue of releases and so on because that's for the arbitrator to decide. But for purposes of detiding what the parties were intending here, your position would have to be, I gather, that the release clause and the waiver clause is not part of the agreement. Otherwise, you couldn't do these other things. Is that correct? I'm not sure I understand. It's a complete release. Right. It's a really broad release. Okay. Everything. You're saying all these things happen. The agreement seems to say, hey, if there's anything else, it's gone. And you're saying it doesn't matter. It doesn't matter. It doesn't go to arbitration because, you know, the arbitration only deals with Section 4 and nothing else. That's for the court. And I'm having difficulty seeing how you get there, how you get around the language of, say, the release, which normally you don't get to if this is going to be arbitrable. Well, first, the court below didn't actually get to the release in issuing his decision. I'm just talking to you. I think he could have. If we're talking about the release, we certainly don't have a knowing waiver of the forgery of the negative pledges to the bank. Isn't this a release of all known and unknown claims? No, absolutely not. It's certainly not a knowing waiver of those. And that's not talked about just with regard to waivers of covenants not to sue. It's talked about with regard to arbitrability as well. It has to be a knowing waiver. It has to be clear evidence of the same. We've heard some discussion about the Renicar case. Three days later, the Granite Rock case, I think, speaks to those issues rather clearly. And it does so both in the general terms and specific. What it talks about is whether parties have agreed to submit a particular dispute to arbitration is an issue for judicial determination. And, again, as we talked about earlier, we start there. So when we look at what the judge can or should look at, first in looking at the arbitration clause, none of our causes, and I don't want to keep repeating what they are, but they occurred, remember, they occurred prior to the allocation agreement, but the claims didn't accrue until after the allocation agreement. It was only when the terminated employee from the Mastros came and told Mr. Momet, hey, this is what was happening during your investment when it was being run. That's when he found out. They didn't accrue until afterwards. When they accrued, he then files in state court. They file a motion to dismiss, then remove it to district court, while simultaneously filing an arbitration in Arizona and a motion to compel arbitration in Arizona. Now, I think it's pretty significant to note their motion to dismiss, their brief in front of the case in front of you, on page 40, they say they did not seek to have Momet's claims resolved in arbitration. So that wasn't even their position. Can I back up? I mean, since you're arguing the scope of Clause L, the release clause, I'd like to focus some attention on what I think is an analytically prior question, and that is should this go to the arbitrator to determine what is arbitrable? Because I'm kind of stuck on the language that seems to me to say that the arbitrator determines the scope of the arbitration agreement. Now, why is that not? I mean, you heard the discussion that we've been having. At the moment, Judge Wu seems to think, well, maybe it doesn't say it clearly enough, and the law has got to say it clearly. But it seems to me that it says it fairly clearly. Why is it to you not clear? Well, you know, even we talked about Renicar. Three days later, it was Granite Rock. I just want to know, looking at the language here, why is it not clear? We do not have a claim that arises under this dispute. Relates to the dispute? No. Our claim is based not with regard to the distribution of the allocation. The trademark clearly does arise, because the trademark is referred to in this agreement. There's a fairness evaluation that was done by that consulting company. And so your client is complaining now that he's not getting any money for the trademark. But that is assets allocated with some of that in mind. So clearly that falls within the agreement. I don't think so, Judge Wu, and if I can explain why. What we have here is the trademark was taken out years prior. In other words, our dispute isn't the allocation from the buying company through there. Our dispute is years later. No, it's that he's not getting any money for the trademark. So why is that? You know, and somebody else is getting money, allocated the money for the trademark. His claim on the trademark is involved here. But years earlier when the trademark was diverted from the entity to the individuals is when our claim. The whole point of this document is to do the allocation, and the parties are saying, you get this, you get this, you get this, and don't talk to us anymore about it because we've resolved all this. And now he's claiming, well, you know, even though I know that I'm not getting any money for the trademark, I still want money for the trademark from you, apparently, from this guy. So why isn't that clearly within this agreement? Again, because the claim is when it was diverted, which, again, didn't accrue until afterwards when we were told of it by my client. He knew about it prior to signing this agreement. Because obviously it refers to it. Yeah, it refers to a transaction, but we don't know, he didn't know when it came out or how it came out. That wasn't disclosed until afterwards. Well, you know, L, section L, doesn't use the word accrue. You keep using accrue. And I'm not sure I agree with you that it didn't accrue until he finds out about it. But the language in L doesn't use the word accrue, it uses erisis. Right, no, no, I understand that. And I don't think that's a distinction that now moves me into arbitration either. Our claims were based on a certain set of facts occurring well before. Intentional torts, we've got no knowing waiver, not discovered until after. And that's the distinction that I think applies. Now, I think it applies if we look at the arbitration clause only, which is what the court, the district court did. But I also think it applies when we look at the covenant not to sue and the arbitration clause when they intertwine. Although, as Judge Smith pointed out, that wasn't part of what was decided below. I mean, the reality is, if you're right, then there's really no point in having an arbitration clause, ever. Anybody can just come up with all these intentional torts and say, well, you know, when we got to closing, you looked at me in a really bad way, and I knew right then that you were a con artist and I was going to find something that you'd done. And pretty soon, well, at least it will give these law students heart that there's lots of business out there. Look at this case and you will see there's lots of litigation to be had. But if the purpose is to resolve disputes, to minimize costs and so on, it seems to me with respect that this completely vitiates the whole purpose of trying to have things resolved in arbitration. And as you know, the Moses Cone case says, I'm quoting, generally the FAA establishes, as a matter of federal law, any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration. The Supreme Court's been really clear about that. It has, absolutely. But most recently, that specific language was addressed by Justice Thomas in his decision in Granite Rock, and he explains that the presumption simply assists resolving arbitratability issues within that framework, and refining the presumption to this role reflects its foundation in the federal policy favoring arbitration. I'm sorry, arbitration. And he continues, as we have explained, this policy is merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce arbitration agreements. So what he talks about in this case, well, what he says is when we say presumption of arbitratability, we're saying not that it gets an elevated standard, but that it gets the same standard as you get when you review any other clause of the contracts. And you're saying that Justice Thomas said basically what we said in Cone is just pablum, doesn't mean anything. No, no, not at all. He places it in the context of the fact that there's a long history of judiciary saying we're not sending it to arbitration. Doesn't that argue in favor of applying the presumption that it would go to arbitration? No, he's. Or the opposite. No, no, no. He says it places on the same standard as any other contract, any other contract term, any other contract analysis. And when we do, and to get to the earlier point you made, Judge Smith, with regard to, you know, doesn't this then get rid of all arbitrations and everybody can have work? Well, you know, that issue back in Mediterranean in the Ninth Circuit and all these cases, this has been an ongoing issue since arbitration has come out. But what Mediterranean talks about, and really there's not any inconsistency in this, is you look at the specific languages of the cause of action, and if I am just naming something a tort to escape by the arbitration clause, well, then tough luck, I go to arbitration. Let's get back to the point that Judge Fletcher made. When you look at the actual language here, and the issue is whether it is for the arbitrator to decide whether this goes forward in arbitration, that's where the determination gets made, not by the district court. The arbitrator may very well agree with you that the tort that you refer to is not covered in this agreement, but that's the decision for the arbitrator, is it not, under the language of this document. I do not believe the language of this document is clear to suggest the same, first. Housman versus Dean Wetter, 18 take knowledge. I mean, again, the entire, I don't think there's a disagreement with the cases. But you can't say the cases, let's look at the language of the agreement that controls this. No, I understand that, but again, none of these causes, and it wasn't even the point of the appellants in their filing in the motion to district court to move our case to arbitration. In page 40 of their brief, they say that they did not seek to have our claims resolved in arbitration. That wasn't even what they claimed. When they filed their motions that led to the order that brings us here, it wasn't to compel us to go arbitrate there. That wasn't their claim. Right now, though, would you agree that when you take these two cases together, what we're being asked to do is to untie the Gordian knot and decide, number one, is this case to be submitted to the arbitrator to determine whether the agreement is arbitrable and the issues are arbitrable. That's issue number one. If you're right, then, of course, we go from there and we start analyzing the contract. We go to the district court and so on. If you're wrong, then it goes to the arbitrator. The arbitrator makes all of the determinations that you're talking about, and the arbitrator may very well spit some of these out and say, no, these were not covered by the agreement. These need to be litigated. Isn't that correct? I think that is, and that gets us back to the Moses Cone case that you talked about, which says it's incumbent on – in fact, the case – it's not for the district court to punt this. If it's close, the district court is supposed to be the one that decides, and I think the district court was right on the language of our agreement issuing that decision. But ultimately, we have to decide – I guess the review here is de novo, is it not, on this matter, since it's a legal contractual construction issue? I believe so. The only caveat is, because I've read probably more cases than I should have on this, there's that language in first options that talks about a factual standard as it relates to the contract – I'm sorry, a clearly erroneous standard as it relates to the contract issues, but a de novo standard as it relates to the legal issues of the arbitration clause. Which is the first issue here, right? Right. Okay, good. Thank you very much. I'll see him out of town. Thank you. Thank you very much. Why don't we give you a minute to respond, if you want it now, or, you know, you're going to talk later. Or just meld it into the other case. Why don't we do the next – let me do this formally for the record. Marmot v. Mastro, number 10-15276 is now submitted for decision.
judges: Wu, Fletcher W. , Smith M.